UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW SHEETS,

     Plaintiff,

v.                             Case No. 2:25-cv-00653-SPC-NPM

JOSEPH ANGELINI in personal
capacity, JOSE DELGADO in personal
capacity,

     Defendants.

_____/

## DEFENDANTS ANGELINI AND DELGADO'S MOTION TO THE DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, Officers Joseph Angelini and Jose Delgado, in their individual capacities, by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), file the following motion to dismiss Plaintiff's Amended Complaint (Doc. 25):

## Introduction

Plaintiff brings yet again another lawsuit against the City of Punta Gorda and its officers.[1] This time, on July 22, 2021, Plaintiff alleges he was "protesting" on a

---

[1] Although Plaintiff is proceeding without a lawyer, he has plenty of experience litigating in federal court. *See Sheets v. City of Punta Gorda, Florida*, 2:19-cv-484-SPC-MM; *Sheets v. City of Punta Gorda, Florida*, 2:22-cv-246-SPC-NPM; *Sheets v. Bell*, 2:23-cv-35-JLB; *Sheets v. City of Punta Gorda et al.*, 2:24-cv-495-KCD-DNF; *Sheets v. Jimenez et al.*, 2:24-cv-704-SPC; *Sheets v. Prummell et al.*, 2:24-cv-943-SPC-NPM; *Sheets v. Charlotte County et al.*, 2:24-cv-958-JES-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-61-KCD-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-130-KCD-DNF; *Sheets v. Martin et al.*, 2:25-cv-444-SPC-NPM; *Sheets v. Lipker et al.*, 2:25-cv-493-KCD-DNF; *Sheets v. Pribble*, 2:25-cv-500-KCD-NPM; *Sheets v. Woelk et al.*, 2:25-cv-578-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-583-SPC; *Sheets v. Woelk et al.*, 2:25-cv-611-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-612-KCD-NPM; *Sheets v. Angelini*

public sidewalk in front of a local elementary school. Naturally, this prompted some concern from parents and members of the school and ultimately ended in Plaintiff's arrest and subsequent prosecution. (Doc.12-1, Affidavit, Doc. 25, Pg. 2, ¶3). Unhappy with his criminal case, Plaintiff initially sued the judge presiding over the case, Judge Peter Bell. *See Sheets v. Bell*, 2:23-cv-35-JLB-KCD. Plaintiff was unsuccessful. Plaintiff was tried and convicted pursuant to Florida Statutes 877.03 (Breach of Peace) and Florida Statute 877.13(1)(A) (Disruption of a School Function). (Docs. 12-2, 12-3). *See State of Florida v. Sheets*, (Charlotte County Court, Case No: 21001041M).

Unhappy with that outcome, Plaintiff moved for ineffective assistance of counsel, which was ultimately denied. Then Plaintiff moved for postconviction relief – again, denied. Now, Plaintiff brings suit against Officers Angelini and Delgado, alleging identical claims against each for retaliation and viewpoint discrimination under the First Amendment. (Doc. 25). Previously, this Court dismissed Plaintiff's claim for false arrest and equal protection with prejudice, leaving him with a final attempt to amend his complaint. (Doc. 23, Pg. 12).

## Grounds for Motion

1. Plaintiff fails to state a proper claim for relief against either Officer for viewpoint discrimination or retaliation as probable cause existed for his arrest and he fails to allege proper comparators. Rather than acknowledge the impropriety of his own

---

*et al.*, 2:25-cv-644-KCD-DNF; *Sheets v. Gray, et al.*, 2:25-cv-667-JES-DNF; *Sheets v. Renz et. al.*, 2:25-cv-01000-KCD-DNF

actions, Plaintiff's amended complaint engages in "whataboutism" or a *tu quoque* argument to shift blame.

2. Officers Angelini and Delgado are entitled to qualified immunity, as there was arguable probable cause for the arrest.

3. It was not clearly established that at the time of this incident, and in this specific factual context, that Plaintiff's "speech" was protected under the First Amendment.

**Memorandum of Law**

## I.    Standard

In evaluating the sufficiency of a complaint, the court must accept well pleaded facts as true and resolve them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche,* 144 F.3d 732, 735 (11th Cir. 1998). However, if the plaintiff can prove no set of facts that would entitle him to relief, then the defendant is entitled to a dismissal for failure to state a claim. Although the plaintiff is not held to a very high standard on a Rule 12(b)(6) motion, the plaintiff is still required to "allege some specific factual bases for those conclusions or face dismissal" of the claim. *Jackson v. Bellsouth*, 372 F.3d 1250, 1263 (11th Cir. 2004). Moreover, in reviewing a motion to dismiss, the court need only accept *well pleaded facts* and reasonable inferences drawn from those facts. Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a rule 12(b)(6) dismissal. *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).

*Pro se* parties must comply with the minimum pleading standards set forth in the Federal Rules of Civil Procedure and the Local Rules. *Nawab v. LVNV Funding LLC*, No. 5:12-cv-129-Oc-10PRL, 2012 WL 12918283, at *1 (M.D. Fla. Nov. 19, 2012). A court cannot rewrite an inadequate complaint to plead essential allegations in order to sustain an action. *Pontier v. City of Clearwater, Fla.*, 881 F. Supp. 1565, *1568 (M.D. Fla. April 13, 1995).

## II.    Angelini and Delgado are Entitled to Qualified Immunity

### a. *Qualified Immunity Standard*

Most importantly, Officers Angelini and Delgado are entitled to qualified immunity. The Supreme Court "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232, (2009) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227, (1991) (per curiam)). "Although 'the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need *to shield officials from*

*harassment, distraction, and liability when they perform their duties reasonably*." *Id.* (emphasis added). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks and citation omitted).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (internal quotation marks and citation omitted). Essentially, this boils down to "whether the actions are of a type that fell within the employee's job responsibilities." *Id.* (internal quotation marks and citation omitted). There are two parts to this inquiry: whether the defendant "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* Accordingly, investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers. *Nigro v. Carrasquillo*, 152 F. Supp. 3d 1364, 1368 (S.D. Fla. 2015), *aff'd*, 663 F. App'x 894 (11th Cir. 2016). Officers Angelini and Delgado were indisputably operating in their discretionary capacity. Once an officer has met that burden, the burden then *shifts to the Plaintiff* to show 1) that the conduct violated a constitutional right and 2) the right was clearly established. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

In order to demonstrate that a right is "clearly established" a Plaintiff must provide one of the following 1) reliance on a "materially similar decision of the Supreme Court, of the [Eleventh Circuit] or of the supreme court of the state in which the case arose[,]" 2) invocation of a "broader, clearly established principle that controls the novel facts[] of the case[,]" or 3) showing that the officer's acts "so obviously violate the Constitution that prior case law is unnecessary." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023) (cleaned up). "If a plaintiff proceeds under the first or second method, he must point to a court decision." *Id.* "The second and third methods require obvious clarity[,]" meaning "the principle must be so apparent that, even without a case with similar facts to light the way, any competent officer would know that his conduct crossed the line." *Id.* (cleaned up). The Supreme Court and Eleventh Circuit have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights.  *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). This analysis is not predicated on what is obvious to the courts; rather, the Eleventh Circuit has cautioned that the analysis must ask whether "every reasonable officer" would have known the right is clearly established. *See Crocker v. Beatty*, 995 F.3d 1232, 1242 (11th Cir. 2021) (distinguishing *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) and granting qualified immunity to deputy on Plaintiff's First Amendment claims for filming on side of the road).

"In the past, courts considered those prongs in order. *Corbitt*, 929 F.3d at 1311. Now, courts may "exercise their sound discretion in deciding which of the two prongs

of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

b. *Arguable Probable Cause Existed for Plaintiff's Arrest*

Plaintiff's arrest was supported by probable and arguable probable cause, which acts as a bar to First Amendment 1983 claims. *Prospero v. Sullivan*, 153 F.4th 1171, 1188 (11th Cir. 2025) (existence of probable cause defeats First Amendment claims). Probable cause "does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019). "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Probable cause deals with factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause exists if the totality of the circumstances known to the officers could persuade a reasonable officer that there is a "substantial chance of criminal activity" by the person who is arrested. *District of Columbia v. Wesby*, 583 U.S. 48 57 (2018). A substantial chance is all that is required, "not an actual showing of such activity." *Id.*; *see also Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (holding that the correct standard to evaluate whether an officer had probable cause to arrest a suspect is to "ask whether a reasonable officer could conclude that there was a substantial chance of criminal activity") (alteration adopted) (emphasis added) (*quoting Wesby*, 583 U.S. at 61).

To receive qualified immunity on a First Amendment claim, an officer need not have actual probable cause, but only *arguable* probable cause. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010); *see also Redd v. City of Enterprise,* 140 F.3d 1378, 1383 (11th Cir. 1998); *Phillips v. Irvin*, 222 Fed. Appx. 928, 929 (11th Cir. 2007). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004).

Under Florida Statute 877.03, "whoever commits such as a are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them … shall be guilty of a misdemeanor of the second degree." Fla. Stat. 877.03. Additionally, under Florida Statute 877.13(1)(a), it is unlawful for any person to "knowingly [] disrupt or interfere with the lawful administration or functions of any educational institution …" Fla. Stat. 877.13(1)(a). Plaintiff's actions clearly garnered much attention and disrupted the normal functions of the elementary school. At minimum, the officers had arguable probable cause to arrest Plaintiff under either state given the disruptive nature of Plaintiff's actions, a determination supported by his convictions. Plaintiff may feel very strongly that he did nothing wrong. This does not overcome the Officers entitlement to qualified immunity. *See Loftin v. City of Prentiss*, 33 F.4th 774, 781 (5th Cir. 2022) ("A suspect's declaration of innocence is not a fact supporting a defense.").

Here, as Plaintiff's conviction shows, and as the Court previously recognized (Doc. 23), there was probable cause to arrest him under Florida Statutes 877.03 and 877.13(1)(a). Plaintiff may believe that because he was "protesting" (as he characterizes it) this gives him license to do whatever he pleases, as long as he was engaged in "speech." But the First Amendment cannot be used as a shield to cover criminal behavior. *See Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.").

   c.  *Plaintiff Fails to Present a Proper Claim for Retaliation*

"Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1255–56 (11th Cir.2005)). "The elements of a First Amendment retaliation claim are (1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *Id.*  "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). A plaintiff must generally show lack of probable cause and that the retaliation was a substantial or motivating factor behind the arrest. *See DeMartini v. Town of Gulf*

*Stream*, 942 F.3d 1277, 1296 (11th Cir. 2019) (*quoting Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019)). However, all that is needed for an officer to be granted qualified immunity is the existence of arguable probable cause, not *actual* probable cause. *See Redd*, 140 F.3d at 1383; *Phillips v. Irvin*, 222 Fed. Appx. 928, 929 (11th Cir. 2007).

As explained above, there was arguable probable cause to arrest the Plaintiff for violating Fla. Stat. 877 and 877.13(1)(a).[2] Thus, the officers are entitled to qualified immunity on Plaintiff's retaliation claim. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010).

As the Court pointed out previously, there are "two narrow exceptions" where probable cause does not defeat a retaliation claim. *Turner v. Williams*, 65 F.4th 564, 585 (11th Cir. 2023). The first is "when the 'unique' five factual circumstances" from *Lozman v. Riviera Beach*, 585 U.S. 87, 100 (2018) are all present. *Turner*, 65F.4th at 686.

Once again, the Plaintiff hardly (if at all) attempts to meet the five elements of *Lozman*. The City is not a party in this action. Plaintiff pleads no elements of premeditation or causation.

The second exception exists "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id*. (*citing Nieves*, 597 U.S. at 406). To meet this exception, Plaintiff must "present[s] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 597 U.S. at 407. The "statements and

---

[2] Though it important to note that Delgado is not the arresting officer.

motivations of the particular arresting officer are irrelevant" to the second exception."
*Id.* This exception is "narrow," and as the Supreme Court explained, made in the context of mundane small infractions, such as jaywalking. *See Nieves*, 597 U.S. at 406-07. It can hardly be said that engaging in caustic and offensive behavior outside of an elementary school portraying graphic photographs and disrupting a school is what the Supreme Court had in mind when crafting this narrow exception. A Charlotte County jury certainly didn't seem to think this was a small infraction – which is why they found the Plaintiff guilty.   Likewise, neither should this Court. Plaintiff cannot consistently engage in a pattern of cursing and disruptive behavior in public places and then sue individuals who confront him. *See e.g., In re Watkins*, 2024 WL 1174182 (11th Cir. 2024).[3]

Plaintiff attempts to claim that Punta Gorda officers usually do not give citations for individuals carrying signs or flags. (Doc. 25, Pg. 12). However, as noted above *ad nauseum*, Plaintiff was not cited or arrested for merely holding a sign or flag. He was arrested – and convicted – under both Florida Statutes 877.03 and 877.13(1)(a). These are separate and distinct reasons. More importantly, Plaintiff pleads no factual support to prove this allegation, as well as all allegations in paragraphs 38-43. He provides not one iota of evidence to show proper comparison or that no citation was issued.

---

[3] Moreover, similar to Watkins, given Plaintiff's pattern of filing lawsuits and disruptive behavior, which includes provoking other individuals, and the likely admission of Rule 404(b) evidence at trial, it means there is little to no likelihood that he could ever prevail on claims of non-physical injury damages before a jury. *See In re Watkins*, 2024 WL 4119035 *2 (11th Cir. 2024).

As the Court previously pointed out, Plaintiff's claims fail because he continues to plead improper comparators. He states that two people (Qualls and Wilson) were "counter-protestors" and states that they "did not agree with the content of Plaintiff's sign." (Doc. 25, Pg. 4, ¶11). According to Plaintiff, their viewpoint is an ambiguous "Anti Andrew Sheets." (Doc. 25, Pg. 5, ¶12). But being "anti Andrew Sheets" is not a viewpoint, is nothing more than a label, and as the Court previously noted "does not indicate they were protesting or opposed to Plaintiff's viewpoint – as opposed to, perhaps, his general presence around children with graphic images of aborted fetuses." (Doc. 23, Pgs. 8-9). If being "anti Andrew Sheets" was a real viewpoint, Plaintiff would have pled specific facts to suggest so and what it actually means. Instead, Plaintiff pleads that "Qualls and Wilson took turns using a bull horn to drown out Sheets profanity … to protect all children and parents." (Doc. 25, Pg. 5, ¶12). This shows nothing more than a general opposition to Plaintiff's conduct near small children, not that the "counter protestors" had a viewpoint that differed from his.[4]

   d. *Viewpoint Discrimination*

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective the speaker is the rationale for the restriction.'" *Jackson v.*

---

[4] Nor does the incident report (Doc. 12-1) suggest anything other than concerned parents trying to protect children.

*McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (*quoting Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995).

Plaintiff claims that that all of Punta Gordas officers know that he has a "government accountability and anti police viewpoint," which they are responsible for knowing through the "doctrine of shared knowledge." (Doc. 25, Pgs. 3-4, ¶9). However, this is not how the doctrine of shared knowledge (or collective knowledge) works. For purposes of qualified immunity, the Eleventh Circuit considers "the collective knowledge of law officers if they maintained at least a minimal level of communication during their *investigation*." *See e.g. Prospero v. Sullivan*, 153 F.4th 1171, 1184-85 (11th Cir. 2025) (emphasis added), *quoting Garcia v. Casey*, 75 F.4th 1176, 1188 (11th Cir. 2023). This is normally applied among the investigating and arresting police officers. *Prospero*, 153F.4th at 1185. Plaintiff cannot say that he antagonizes the police force regularly and somehow, they all know what his viewpoint is at each "protest" he engages in. Nor does attaching a random email screen shot from seven months prior (that does not include Angelini or Delgado) magically make it so. It is a conclusory statement that is not entitled to a presumption of truth at the Rule 12(b)(6) stage. *See Turner*, 65 F.4th at 587.

Plaintiff ultimately provides no specific factual information to support that he was targeted for any viewpoint he carried as opposed to his disturbing behavior. Nor does he provide proper comparators as outlined and argued above.

   e. *Plaintiff's Speech is not protected by the First Amendment*

Finally, assuming *arguendo* that Plaintiff has properly alleged claims under the First Amendment, it has not been clearly established that in this *specific factual circumstance*, that Plaintiff's alleged "speech" is entitled to First Amendment protection. As Plaintiff has pled, the reaction to his "speech" did "arouse contempt" which is what it "is supposed to do." (Doc. 25, Pg. 2, ¶3). He also pleads generally that he has been "involved in a literal war of words between himself and the entire Punta Gorda police department." (*Id*. at Pg. 3, ¶9). This includes "belittl[ing]" every police officer" with a "tirade of profanities." (*Id*. at Pg. 4, ¶9). As Plaintiff has pled, and the incident report reflects (Doc. 12-1), Plaintiff went to the elementary school on purpose to provoke and cause a reaction, which resulted in several children crying and in a state of fear. (Doc. 12-1, Pg. 3). This included hurling obscenities at parents and exposing children to vulgar and graphic images, which caused traffic jams, school delays, and concerns of the safety of students.

The Supreme Court has emphasized that " 'clearly established law' should not be defined 'at a high level of generality.' " *Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015), (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although "general statements of the law are not inherently incapable of giving fair and clear warning" to officials, *Id.* at 7 (*quoting United States v. Lanier*, 520 U.S. 259, 271 (1997)), qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law," *Id.* at 6 (*quoting Mullenix*, 136 S. Ct. at 308).

As the United States Supreme Court opined in *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571-72 (1942), "fighting words" are "those which by their very utterance inflict injury or *tend to incite an immediate breach of the peace*." *Chaplinsky*, 315 U.S. at 572. They are "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen v. California*, 403 U.S. 15, 20 (1971). Additionally, "whether are words are fighting words is determined by their *context*." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 432 (1992) (emphasis added).

Here, Plaintiff admits that his intent and behavior were *supposed to arouse contempt*. His proximity to the school's drop-off zone, its small children, their parents, and staff mean that unwilling listeners must endure his behavior. *See Hill v. Colorado*, 530 U.S. 703, 716 (2000) ("[T]he protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that the unwilling audience cannot avoid it."); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 211 (1975) ("It has also been suggested that government may proscribe, by a properly framed law, 'the willful use of scurrilous language calculated to offend the sensibilities of an unwilling audience.' In such cases the speaker may seek to 'force public confrontation with the potentially offensive aspects of the work.' It may not be the content of the speech, as much as the deliberate 'verbal (or visual) assault,' that justifies proscription." (citations omitted)).;

*see also Watkins v. Finch*, 2017 WL 11421092 *5 (S.D. Fla. Jan. 18, 2017) (granting qualified immunity where Officer trespassed individual from a park for singing anti-gay song as it was not clearly established that such behavior did not constitute fighting words), *report and recommendation adopted, Watkins v. Central Broward Regional Park*, 0:14-cv-60546 (S.D. Fla. Jan. 18, 2017) (Doc. 174); *aff'd, Watkins v. Central Broward Regional Park*, 799 Fed. Appx. 659 (11th Cir. 2020).

The instant case is on point. Plaintiff's choice of protest location was directly adjacent a school, where parents and small children had no choice and could not avoid his verbal and visual assault. It was clearly calculated to offend the sensibilities of this unwilling audience and provoke a confrontation.

Faced with numerous complaints from parents and staff, a reasonable official could believe that Plaintiff's disorderly conduct constituted an ongoing threat to school children, parents, and staff. Plaintiff may contend that he did not intend to actually physical harm others or that his behavior was protected, but he cannot show nor dispute that his behavior did not alarm others, cause a disturbance, create complaints, scare small children, or otherwise interfere with the operation of a school. For purposes of the clearly established prong of the qualified immunity analysis what matters is what is known by the *officers*, not Plaintiff's subjective intent. *See White v. Pauly*, 580 U.S. 73, 77 (2017). Given the proximity of the Eleventh Circuit's (unpublished) decision in *Watkins v. Central Broward Regional Park* in 2020, at the time of this incident in July of 2021 it can hardly be said that the specific circumstances presented in this case were sufficient to put the Officers on notice of unlawful conduct.

16

## **Request for Relief**

Wherefore, Officers Angelini and Delgado, in their individual capacities, request this Honorable Court dismiss Plaintiff's amended complaint with prejudice.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), undersigned counsel and Plaintiff, Andrew Sheets, pro se, have conferred in good faith via email on the 24th day of November, 2025, regarding the relief requested herein. Mr. Sheets is opposed to the relief requested in this motion.

Respectfully submitted,

*/s/ David R. Jadon*
David R. Jadon, Esquire
Florida Bar No.: 1010249

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of November, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a true and correct copy of the foregoing through a notice of electronic filing to all parties of record, and on this 26th day of November, 2025 I served copies via e-mail upon the following non-CM/ECF participant: Andrew Bryant Sheets, Pro se, 11408 Pepperdine Street, Punta Gorda, FL 33955 at: deprivationofrightsunderlaw@gmail.com.

*/s/ David R. Jadon*
David R. Jadon, Esquire
Florida Bar No.: 1010249
Roper, Townsend & Sutphen, P.A.
255 S. Orange Avenue, Suite 750

Orlando, FL  32801
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Primary:  djadon@roperpa.com
Secondary:  lramirez@roperpa.com
*Attorney for Defendants JOSEPH*
*ANGELINI in personal capacity, JOSE*
*DELGADO in personal capacity*

18